Petitioner David Alford shot Hans Heath in the back of the neck and dumped his body along Highway 1. There is no doubt about that. Just like this Court's decision in Mays v. Clark, we know the facts of what happened here. We know that Mr. Alford is responsible without any reference to Mr. Alford's statements to police and without any reference to his trial testimony. Heath's blood was found all over the front seat area of Mr. Alford's car. Mr. Alford's blood was also found there because when Alford shot the gun through Mr. Heath's head, the bullet entered the back of his neck, came out the left side of his head where Alford was holding his head in place. It shattered his ring, it broke his finger and left Alford and Heath's blood in the front seat of the car. There were cell phone records, text messages, eyewitness identification that placed Alford and Heath together on the day of the shooting. Instead of calling police afterward, Alford destroyed the evidence. He burnt his bloody shirt. He discarded bloody rags. He cleaned the blood out of the car as best as he could with an entire bottle of bleach. He cut his ring off. He told Steve Hilton a couple days after the shooting, motioning over towards his car, you never know when you're going to need a gun. He got a tattoo of a gun, a skull and a lighthouse on his chest. And there was no physical evidence supporting self-defense. There were no defensive wounds on Mr. Heath. Counsel, the standard isn't whether we think you could have obtained a conviction without the unconstitutional information, or the information that was obtained unconstitutionally. The standard is whether or not there would have been a substantial effect on the jury's determination. So, I mean, that's all evidence that you have pointed out repeatedly in your brief, and I'm not sure why that's necessarily relevant to the legal standard we have to apply. Well, Your Honor, I believe under Brecht or under an unreasonable application of Chapman analysis, the strength of the government's case is one factor on one side of the prejudice ledger. But let me turn to the other side, because the key argument that Mr. Alford makes is this evidence, the interview statements were prejudicial because the prosecutor used them in her closing argument to make my client look like a liar. But that is a permissible use of prior inconsistent statements. And I think that's the most important error that the district court made, was failing to recognize. There's been no allegation in State court or in Federal court that the statements made by Alford to the police were involuntary. He was ---- But you refer to prior inconsistent statements. The trial court was very careful in its analysis when he said that the problem with the prosecutor's argument is not that the prosecutor pointed out inconsistencies, but the prosecutor continued to harp on his failure to say more, even though he had invoked the right to counsel. Well, Your Honor, this Court has held that an omission is a prior inconsistent statement. And so I believe that those are proper, those omissions are properly impeachable as prior inconsistent statements. Not when you've invoked the right to counsel. You can't argue that someone should have said something when you're not even allowed to point out that they said anything. Well, Your Honor, I don't believe that that's the argument the Petitioner has made in State court or here in Federal court. They've never said that because this was some type of, you know, Edwards violation that you couldn't use that silence. And, in fact, it's entirely the prosecutor could merely have relied on the omissions before invocation. Alford was Mirandized. He waived his Miranda rights. He voluntarily started speaking to police and talked about what happened in the house and then even made a statement saying, oh, you know, we didn't, my daughter and I didn't hang out with anyone that day. That was before invocation. So it's the district attorney could have used those pre-invocation omissions to make the same argument. And I think that's the critical piece that the district court missed here. But didn't, particularly. Now, I think that there's no question that we have a Miranda-Edwards error. And in assuming for the moment that the Harrison issue has not been waived, how does that impact your argument? Your Honor, I don't think Harrison or Lujan applies here, and that's because the Petitioner had to testify for one simple reason, because of the overwhelming circumstantial evidence of his guilt for murder. I've listed the evidence at the outset. I won't go through all of that again. This was a very strong circumstantial case for murder. Even the district court said that it doesn't look like he was impelled to testify as a result of the interview statements. He was impelled to testify because of the overwhelming strength of just based on the circumstances of a shot to the back of the head. But what the district court actually said in a footnote was that he didn't prove that he was impelled to testify. The problem with that is that Harrison puts the burden on the prosecution to disprove that fact. In State court, yes. I think it's an open question where the burden lies in Federal court. However, I think just two crystal clear distinctions between Harrison and Lujan in this case, both of those other cases dealt with a true confession. A true confession, I did it. And then as a result of that confession, they had to testify at trial to explain away the circumstances of that confession. There was also either a statement in the opening statement in Harrison or a declaration from defense counsel in Lujan that my client didn't want to testify and the only reason he did was as a result of the trial court's erroneous admission. Here, Alfred was on the defense witness list before the evidentiary ruling at issue. There's been no declaration in Federal court or in State court that Alfred wouldn't have testified. And it wasn't a true confession. There really wasn't anything that inculpatory about his statements to police. The worst he said was we were attacked and I had to do something. And frankly, that actually supports his self-defense theory. So where there's nothing inherently inculpatory about the statement to police, there's nothing in that statement that forced him to take the stand to explain away the circumstances of his offense. He took the stand because it was the only way for him to avoid a first-degree murder charge, which was the prosecution's main theory. But even putting Harrison aside, the trial court said that the principles of Harrison are instructive, and said under Brecht, he can't say that the testimony would have been identical and that the jury wasn't substantially influenced by the testimony the way it came out. Well, Your Honor, respectfully, I think it either is Harrison error or it's not. And I think that you either take the trial testimony as it was actually provided or you find that it was Harrison error. What the district court did of kind of trying to have this in-between standard where I'm not going to go and assert that it falls under Harrison, but I'm still going to discount the trial testimony. I don't think there's any support in law for that. So I don't think Harrison applies. And because of that, I think you can consider Alford's full trial testimony as it was actually offered. And that's the goal is, you know, Federal Court is supposed to review the State Court record as it actually exists and as the trial record exists. And as the California Court of Appeal reasonably held, and that's the standard of review under AEDPA, his trial testimony was the paradigmatic case of second-degree murder, of implied malice murder. And we know that's what the jury found because it found the personal gun use enhancement true, but not the intentional enhancement true. So we know that they relied on implied malice murder. So you're down to two minutes, Your Honor. I'll reserve the rest of my time for rebuttal. Thank you. Excuse me. Good afternoon, Your Honors. Dennis Reardon for Appellee Alford. I thought that what I would do is go back to the fountainhead of the rule that statements taken in violation of Miranda can be used to impeach, which is Harris v. New York, the 1971 opinion by Chief Justice Berger, which was cited in the government's brief. And the telling things about that are, one, of course, the statement was not admitted in the prosecution's case in chief because it had been suppressed. Here it was not. But what followed from that was that when the defendant testified, two things occurred. One, the trial court, and Chief Justice Berger relies on it, gave an instruction that that prior statement taken in violation of Miranda can only be used on the issue of credibility. He instructed the jury they may not consider that statement as evidence of guilt. And the second thing that occurred in Harris was that the statement was not permitted to go back to the jury. The transcript of the statement was not given to the jury during deliberations. You can see that if he had taken the stand, and as the government points out, there was an awful lot of evidence that he needed to explain away, so he may very well have taken the stand, but that if he had taken the stand, the government could have impeached him to the extent any of the statements he made were actually inconsistent with what he said on the stand. Absolutely, Your Honor. But I submit that under Harris, the defense would have been entitled to an instruction that they could not consider any of that impeachment as evidence of guilt. And, of course, what happens in this case is the unconstitutional statement comes in in the case in chief. That is definitive proof that it was the purpose of the prosecution to use it as evidence of guilt rather than impeachment, because at that point they don't know if the defendant is going to testify. They had admitted it as evidence of guilt. Then, in order — therefore, their burden here is to prove two things. If they want to use his testimony as impeachment, they have to establish to the satisfaction of this Court under de novo review that he would have testified but for the admission of that statement. And then, of course, then they also have to show that the statement was only used as impeachment. And the — Did you argue that he would not have testified had the statements not been admitted? We argued, Your Honor, in the district court, the appropriate standard. In the state court. My problem, basically, with this case is that the defendant, neither defendant nor counsel, ever said to the state court that he would not have testified but for the fact that the other evidence existed. There was no claim made in the state court, as far as I can see. Well, what occurs in the state court, of course, is on appeal. The State argues that the — that it was not a constitutional violation. And the defense argues, in response to that, that it was a constitutional violation, which the Court agrees with, and then rejects the argument by relying on the testimony. But you're correct. I would submit, Your Honor, until the State court relies on his testimony to argue harmlessness, the issue of the appropriateness of Harrison simply doesn't come up in the State proceedings. But I agree with the Court that it isn't brief there. But I — what I would submit to the Court is it's appropriate that the Harrison issue be before this Court because it's essentially a rebuttal to the harmlessness argument that the State has raised in Federal court. But let me also point out something that is really important, which is that, in closing, the State absolutely used that videotape as proof of guilt, not for impeachment. And the greatest proof of that, and we cite this at page 29 to 32 of our brief, is time and time again the prosecutor argues he is guilty because of his demeanor. Look at the videotape, which they eventually do in deliberations. Look at his manner. Look at — look at the way he answered the questions. That's not — that's not the demeanor of someone who has acted in self-defense. He discussed his cement business. That's not the demeanor of an innocent party. Well, could they have impeached him if he testified with — with the video rather than just with his statements? Well, what they would have had to do is — is say, ladies and gentlemen of the jury, we are going to impeach his statement, but please, under appropriate constitutional law, you may not consider anything we say about it to be reflecting on evidence of guilt because that would be an unconstitutional and inappropriate use of the — of the video of the — as impeachment. You know, as I say, this jury was never instructed, of course, that this was only impeachment evidence. Do not consider it evidence of guilt. And, of course, the prosecutor did not in any way intend to observe that principle. She had put this evidence in, in her case in chief, not knowing whether the defendant would testify because she believed, in terms of a demeanor, and as the Court pointed out, often what wasn't said in it, that it was evidence of guilt. And the — one other thing I should emphasize is that it is not true that the prosecutor viewed this simply as impeachment and not being incriminatory because what she emphasized was his statement that it's still going to put me in the slammer for X amount of time and what you have because we're attacked, I had to do something about it. He's saying that whatever I do is in some way going to land me in trouble with the law, and they emphasized that statement in closing argument. Do you agree with the government's argument that — that, you know, with the Harrison issue, you can't be a little bit pregnant, for instance, you have to either be all the way in on a Harrison issue or — Harrison violation or not? I mean, the trial court sort of did try to split the baby and say, well, Harrison at least supports the notion that if the testimony might have been different, then I — we shouldn't find that the error was harmless. Well, frankly, we — we very much take issue, although the — the decision was favorable to us, to Judge Tiger's statement that we hadn't carried the burden on showing that Mr. Alford would have testified anyway because, as the Court has pointed out, the law is very clear in — in — in Harrison and in this Court's decision in Lujan that that is a burden the government — the state has to carry. I agree with you on the burden, but how is the state court to rule on the question of whether he testified because of that? If no claim is made that that's why he's testifying, how can it be an error for the state court not to rule on an issue where he doesn't say that I'm testifying for that reason? Well, Your Honor, the — the position that we've taken is that the — the claim which the state conceded was preserved and exhausted when — when this petition was filed in Federal court was, A, was there a constitutional violation, indisputably established? And, B, was it — was it harmless? And they conceded that those are the two prongs of the constitutional claim. I would submit, Your Honor, that the Harrison argument here is an argument. It's an additional citation, and it's a rebuttal to their claim that this was harmless based on the testimony. So I — I think that the question the Court is raising is, is the Harrison claim unexhausted here? And we would submit — You know, I'm not saying you don't have a case, and I'm not arguing about your other issues. I'm only saying, was it unreasonable for the state court not to — and I agree with you on the burden. It was the state's burden if there was an issue raised. But somebody testifies and doesn't say the reason I'm testifying is not — I'm not doing it voluntarily. I'm doing it because I have to answer what the state's putting in. And that's the only reason I'm testifying. But the state doesn't know. Defendants do testify. And here's the defendant who testifies and never says in the state court, I'm testifying not because I want to, but I'm testifying because of the evidence the state is putting in. Well, if I understand the Court, and forgive me if I'll be a few seconds over, the Court is essentially saying that if you make them a random motion and you lose, you need to anticipate that that will be overturned on — and as a result, testify because you're dealt — dealing with this unconstitutional statement admitted in the case in chief, the defender has to make a record that they're testifying and want to preserve that issue because of the Miranda violation. Because if at some point in the court of appeal they find that the trial court was incorrect, it is a Miranda violation, you've made a record at that point on the motivation for testifying below. And that's a pretty complex and novel requirement. I would submit, and I suppose I say this, is that the court of appeal was under the obligation under Harrison and controlling Supreme Court law to not rely on the defendant's testimony unless it could find in the record adequate evidence that the state had carried its burden of showing that the testimony would have been given even in the absence of the constitutional violation. Thank you, Counsel. Thank you, Your Honor. We'll put three minutes on, Allie. Equalize the time. Thank you, Your Honor. I'd just like to make three brief points. First, there's been no claim of Doyle error, no argument that the prosecutor committed misconduct by using those omissions. If that is a direction that the court wants to go, we're happy to provide supplemental briefing on whether that type of error should be factored into the Brecht analysis. Second, there were other things that the prosecutor used to impeach Mr. Alford's trial testimony other than just the prior interview statements. The prosecutor pointed out the intrinsic inconsistency of his trial testimony and made the argument that the defendants had two years between the time he committed the crime and trial to make up any sort of defense. That's an argument that can be made irrespective of any prior statement of police. Was the jury ever told that evidence could only be used for impeachment and they were not allowed to take into account on the merits? The jury was instructed as to limited purpose, but because this evidence came in in the case in chief, I don't believe that they were instructed only to consider it for impeachment. However, given that that was the sole purpose or the primary use that the district court put that evidence to, I think it's perfectly reasonable to say that was used for impeachment because it was a voluntary statement that's a legitimate use for that, and therefore, it's not that prejudicial compared to the strength of the evidence. And finally, I would direct this Court's attention to Mays v. Clark, which is a case I know this panel is familiar with. And in that case, they found that a harmless, a Miranda error was harmless under ADPA's deferential standard of review, and they pointed to other evidence in the record that was, you know, the confession was outweighed by that other evidence in the record. So I believe that's the best case, the closest case on point in terms of the facts and the law. Even if not one of our most brilliant decisions. I would wholeheartedly disagree, Your Honor. I think it's among your best work. Your dissent was good. And just in conclusion, I would say, you know, because the interview statement was not particularly inculpatory, because the government's case was strong, and because the interview statements were only used for the valid purpose of impeachment, we believe the district court erred. We would ask this Court to reverse the district court and to deny relief. Thank you, counsel. Thank you. The case just argued will be submitted for decision. Thank you both for your arguments today. The case of Morales v. Hedgepeth is submitted on the briefs, and we'll proceed with oral argument on Northstar Financial v. Schwab Investment.
judges: Reinhardt, Thomas, O'Malley